[Cite as *Johnson v. Montgomery*, 2016-Ohio-1472.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| NICHOLE JOHNSON | : | |
| | : | Appellate Case Nos. 26319 |
| Plaintiff-Appellant/Cross-Appellee | : | 26322 |
| | : | |
| v. | : | Trial Court Case No. 10-CV-8476 |
| | : | |
| MARY E. MONTGOMERY, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees/ | : | |
| Cross-Appellants | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the ____8th____ day of ____April____, 2016.

. . . . . . . . . .

DENNIS MULVIHILL, Atty. Reg. No. 0063996, Wright & Schulte, LLC, 23240 Chagrin Boulevard, Suite 620, Cleveland, Ohio 44122 and STEPHEN D. BEHNKE, Atty. Reg. No. 0072805, Wright & Schulte, LLC, 812 East National Rd., Vandalia, Ohio 45377
      Attorneys for Plaintiff-Appellant/Cross-Appellee, Nichole Johnson

JONATHAN B. FREEMAN, Atty. Reg. No. 0067683, and STEVEN E. BACON, Atty. Reg. No. 0059926, Altick & Corwin, One South Main Street, Suite 1590, Dayton, Ohio 45402 and
JEFFREY D. SLYMAN, Atty. Reg. No. 0010098, 211 Kenbrook Drive, Suite #5, Vandalia, Ohio 45377
      Attorneys for Defendants-Appellees/Cross-Appellants, Thirty-Eight Thirty, Inc.
        d/b/a/ The Living Room and Michael C. Ferraro

DAVID K. FRANK, Atty. Reg. No. 0022925, and ROBERT H. STOFFERS, Atty. Reg. No. 0024419, Mazanec, Raskin & Ryder Co., L.P.A., 175 South Third Street, Suite 1000, Columbus, Ohio 43215
      Attorneys for Third-Party Defendant-Appellee/Cross-Appellee,

Western Heritage Insurance Company

MARY MONTGOMERY, 246 Grassy Flat Road, Greensburg, Kentucky 42743 and 2464 Argyle Drive, Columbus, Ohio 43219
        Defendant-Appellee, *pro se*

STEVEN ZEEHANDELAR, Atty. Reg. No. 0019561, 471 East Broad Street, 12th Floor, Columbus, Ohio 43215-0069
And
KEVIN CONNELL, Atty. Reg. No. 0063817, One Dayton Centre, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
        Attorneys for Defendants-Appellees, State Farm Insurance Company and
        State Farm Mutual Automobile Insurance Company

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiff-appellant/cross-appellee Nichole Johnson appeals from a judgment on her personal-injury claim. Johnson contends that the trial court erred by directing a verdict in favor of defendant-appellee Michael C. Ferraro. The tortfeasor, defendant-appellee Mary Montgomery, has not participated in this appeal. Defendant-appellee/cross-appellant Thirty-Eight Thirty, Inc. d/b/a/ The Living Room contends that the trial court erred by overruling its motion for a directed verdict, arguing that Ohio does not recognize a cause of action based on negligence of a person or entity furnishing intoxicating beverages to a tortfeasor, and also arguing that the evidence does not support a finding of proximate cause. Thirty-Eight Thirty and Ferraro also allege that the trial court erred in instructing the jury on the elements of a common-law negligence claim. Third-party-defendant-appellee, Western Heritage Insurance, has filed a brief in which it asserts that any issue regarding the summary judgment rendered in its favor has been waived or abandoned. State Farm Insurance, designated as an intervening plaintiff in the trial court, has not participated in this appeal.

**{¶ 2}** We agree that the summary judgment rendered by the trial court declaring that Western Heritage had no duty to defend has not been challenged in either the appeal or the cross-appeal; therefore that part of the judgment will not be addressed herein. We conclude that the trial court did err in allowing the issue of common-law negligence to go the jury, because the Dram Shop Act, R.C. 4399.18, provides the exclusive cause of action against a liquor permit holder for injuries sustained as a result of the negligent conduct of a person who becomes intoxicated by alcohol furnished by the permit holder. Based on our conclusion that the common-law negligence claim should be dismissed, the issue regarding the personal liability of a corporate officer for negligence is now moot. Accordingly, the judgment of the trial court against Thirty-Eight Thirty, Inc., is Reversed and Vacated. In all other respects, the judgment of the trial court is Affirmed.

## I. Drinking While Working Leads to Negligent Operation
## of a Motor Vehicle, Causing Severe Injuries

**{¶ 3}** Thirty-Eight Thirty is locally known as a strip club, The Living Room, on North Dixie Drive in Dayton, and is owned and operated by Michael Ferraro, the sole officer and sole shareholder of Thirty-Eight Thirty, Inc. Thirty-Eight Thirty admitted in its answer that it holds a liquor license authorizing it to sell liquor in the club. The tortfeasor, Mary Montgomery, worked as a dancer at the club pursuant to a written contract that required her to pay $30 each night to lease space for her dancing, in exchange for being allowed to keep all tips she receives from customers, but that provided her no other wages or compensation. The Living Room priced drinks purchased for dancers at a significantly higher amount than the price offered to regular customers. Although dancers were not

required to drink, their becoming intoxicated during their shift from the drinks purchased for them by customers was a regular occurrence. Ferraro admitted that the dancers often used alcohol to alter their mental state enough to enable them to strip in front of strangers, and there was no limit to the amount of alcohol the dancers were allowed to drink. Although it was known that dancers occasionally became intoxicated during their shift, it was not a regular practice for the club to provide them with safe transportation or to confirm that someone not intoxicated was driving them home. No policy was in place to prevent the dancers from impaired driving after leaving the club. It was established that a significant portion of Thirty-Eight Thirty's profits were derived from the charges for the drinks purchased for the dancers.

{¶ 4} Montgomery worked as a dancer at The Living Room on the evening of July 3, 2010, into the early morning hours of July 4. She admitted that during her shift she drank alcoholic drinks, purchased for her by customers, and that she was intoxicated when she left the club. When she left the club, no one took any steps to prevent her from driving while intoxicated. She left the club between 2:00 A.M. and 2:30 A.M., and drove her vehicle toward her home in Springfield, after stopping at a Speedway near the club. Montgomery caused a motor vehicle accident to occur on I-70, when she lost control of her vehicle and collided with a vehicle driven by Eric Staeuble. The impact of the collision forced Staeuble's car into a brick wall. Nichole Johnson, a front-seat passenger in Staeuble's car, suffered severe injuries in the accident. Neither Johnson nor Montgomery had any memory of the details of the accident.

{¶ 5} Johnson suffered a brain injury, multiple fractures in her head, broken teeth, broken ribs, and broken bones in her upper and lower arm, elbow, pelvis, femur and ankle.

She suffered a lacerated liver and a collapsed lung. Her injuries required eleven surgeries, and physical and occupational therapy over the next ten months after the accident. The surgeries left her with nine plates in her face, and rods in her neck, arms and legs, which impair the function of these body parts, and will continue to cause pain and suffering. The injuries and medical treatment also left her with significant scarring and a changed appearance, due to maxillofacial plastic surgery to reconstruct her face. Her medical bills total $819,525.55. Johnson also established that she lost wages in the sum of $15,510. About a year after the accident, Johnson married Eric Staeuble, who testified how the accident changed Johnson from a person who was very active and outgoing to a person who suffered debilitating pain on a daily basis, limiting her daily routine to a sedentary job and bed rest.

{¶ 6} Ferraro is the sole shareholder of Thirty-Eight Thirty, Inc., and the only officer of the corporation. Ferraro admitted that he personally made all decisions for the company. He acknowledged that the corporation had never had a corporate meeting for officers or for shareholders. He dictated the terms of a non-negotiable contract with the dancers that they were required to sign before they were allowed to dance at the club. The contract did not contain a no-drinking or limited drinking policy, although the club did have a no-drug policy. The club made 95% of its profits from the sale of alcoholic drinks, and 30% to 40% of the drinks sold at the club were purchased by customers for the dancers. Ferraro allowed all persons working in the club to drink on the job, but the quantity of their drinking was not monitored or limited. He was well aware that 80% to 85% of the dancers drank on the job, and many became intoxicated during their shift, but he had no policy in place to assure their safe transportation home after the club closed

each night. Ferraro claimed that the higher pricing for drinks purchased for dancers was intended to reduce their drinking, because the higher prices would discourage customers from paying the extra cost, but he acknowledged that the higher prices made up a significant portion of his profits, probably in excess of 50%. On a typical evening, the club had 200-300 customers and 30 to 40 dancers, and one person working security. A part of the security worker's responsibilities was to monitor the parking lot at the end of the night to assure that the dancers made it safely to their cars, without interference from customers. Since the workers, including the waitresses, the bartenders, the dancers, and the security guard, were all allowed to drink on the job, Ferraro admitted that their ability to spot persons who were intoxicated might be impaired. Ferraro explained that if a dancer's intoxication was suspected, a person designated by the dancer to provide her a ride home would be called.

{¶ 7} Montgomery testified that during the time she worked at the club, no one from management ever discouraged her from drinking during her shift. She explained that waitresses would encourage customers to "buy the lady a drink," which was successful -- she never paid for her own drinks. On the date of the accident, Montgomery admitted that she had ingested cocaine earlier in the day and that during her shift at the club she consumed three beers. Although she later admitted to being intoxicated at the time of the accident, at the time she left the club neither she nor anyone working at the club was fully aware or had knowledge of her intoxication or her inability to safely operate her vehicle. She never observed the security person escorting any dancer to the dancer's car at the end of the evening, and although she saw other dancers become visibly intoxicated, she never saw anyone from the club discourage or stop their drinking, take their car keys, or

arrange for alternative transportation.

## II. The Course of Proceedings

{¶ 8} Johnson brought this personal injury action against the driver of the car that caused the car accident, and the corporation and individual for whom the driver worked on the night of the accident. The insurance company that provided indemnity insurance to the corporation was joined in the action to determine its duty to defend its insured. A default judgment was rendered against Mary Montgomery, which established by default that she negligently operated her vehicle based on her intoxication at the time of the accident, and that her negligence was the proximate cause of the injuries suffered by Johnson as a result of the accident. Prior to trial, the trial court rendered summary judgment to Western Heritage, the insurance company for Thirty-Eight Thirty, finding that it had no duty to defend the corporation or its officer, based on a "liquor liability" exclusion in the insurance contract that excluded coverage for incidents caused by the furnishing of intoxicating beverages.

{¶ 9} The trial was conducted by the Magistrate for the trial court, by consent of all parties. After the plaintiff rested, a motion for a directed verdict was granted as to the personal liability of Ferraro, and on the claims alleging a violation of the Dram Shop Act, R.C. 4399.18. A defense motion for directed verdict on the issue of negligence was overruled. The jury returned a verdict for Johnson, and identified in jury interrogatories that Johnson was entitled to damages in the total amount of $2,854,645.55, which included $819,525.55 for past medical expenses, $120,000 for past pain and suffering, $15,120 for past lost wages, $220,000 for future medical expenses, and $1,680,000 for

future pain and suffering. In an interrogatory, the jury found that Johnson had sustained a permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, or physical functional injury that permanently prevents her from being able to independently care for herself or perform life sustaining activities. The jury found that State Farm Insurance, intervening plaintiff, was damaged in the amount of $58,058.50, based on the amount it paid for medical expenses and property damage. The jury found that Montgomery and Thirty-Eight Thirty were each 50% liable for the injuries and damages. Therefore, the jury found that Johnson was entitled to compensatory damages in the amount of $1,427,323 and punitive damages in the amount of $50,000 from Montgomery. The jury found that Johnson was entitled to compensatory damages in the amount of $1,427,323 from Thirty-Eight Thirty, Inc. No claim for punitive damages was pursued against Thirty-Eight Thirty or Ferraro. The jury also reached a verdict for State Farm, finding that Montgomery was responsible for $29,029.25, and that Thirty-Eight Thirty was responsible for $29,029.25 of its damages.

{¶ 10} Subsequent to the trial, a Magistrate's Decision was issued documenting the directed verdict rulings. Both parties filed objections to the Magistrate's Decision pursuant to Civ. R. 53. Johnson's objections alleged that an error was made in directing a verdict on the issue of Ferraro's personal liability. Thirty-Eight Thirty's objections argued that the trial court erred in allowing any issue of negligence to go the jury after dismissal of the Dram Shop Act claims, which Thirty-Eight Thirty argues is the exclusive remedy for a party who has been injured by a person who became intoxicated at an Ohio liquor establishment. Thirty-Eight Thirty also objected to the jury instructions provided on the issue of negligence, foreseeability, proximate cause, intervening and superseding cause,

two or more defendants, multiple defendants and damages. Thirty-Eight Thirty also objected that the trial court rejected two of its proposed jury instructions, addressing the issue of assured clear distance and driving under the influence. Thirty-Eight Thirty also objected to the trial court's rejection of two of its proposed jury interrogatories; one that asked the jury to find whether Johnson was under the influence of drugs and alcohol at the time of the accident, and one that asked the jury to describe in a narrative the manner and nature of the defendant's negligence. Thirty-Eight Thirty also objected to the trial court's evidentiary ruling that limited the testimony of the police officers to the information set forth in their police reports.

{¶ 11} The trial court overruled all the objections, adopted the Magistrate's decision, and entered judgment in accordance with the jury verdict. The trial court concluded that the issue of Ferraro's personal liability was properly dismissed, the jury was properly instructed, and appropriate interrogatories were given for all negligence issues. The trial court concluded that the Dram Shop Act was not the exclusive remedy against liquor permit holders, and that under the facts of this case, a claim based on common-law negligence was properly alleged and allowed to be presented to the jury for disposition. The trial court commented that to allow a liquor permit holder to benefit from the sale of alcohol and then hide behind the Dram Shop Act to avoid liability would "fly in the face of decency and fairness." Dkt #13 at page 10. The trial court concluded that both "justice and public policy" required the recognition of a claim based on negligence under the facts of this case. *Id.* at page 12. The trial court also concluded the limitation on the police officer's testimony was an appropriate use of discretion to avoid undue surprise from witnesses who were not previously disclosed.

{¶ 12} From the trial court's judgment adopting the Magistrate's Decision, Johnson appeals the dismissal of her claim for personal liability against Ferraro. Thirty-Eight Thirty and Ferraro cross appeal, raising only the issues that arise out of the trial court's recognition of a common-law action for negligence against a liquor permit holder when the Dram Shop Act is inapplicable.

### III. Standard of Review

{¶ 13} Because a motion for a directed verdict involves a question of law, our review is de novo. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 1. "De novo review requires the reviewing court to determine the legal issues without any deference to the trial court's determination." *Bank of Am., N.A. v. Thompson*, 2d Dist. Montgomery No. 26316, 2015-Ohio-456, ¶ 8, citing *Mattice v. Ohio Dept. of Job & Family Servs.,* 2d Dist. Montgomery No. 25718, 2013–Ohio–3941, ¶ 7. When interpreting a statute, we also utilize a de novo standard of review and give no deference to the trial court's conclusions of law. *McClure v. Alexander*, 2d Dist. Greene No. 2007 CA 98, 2008-Ohio-1313, ¶ 7.

{¶ 14} A review of proper jury instructions is reviewed for an abuse of discretion. *State v. Wolons*, 44 Ohio St. 3d 64, 541 N.E. 2d 443 (1989); *State v. Elliott*, 2d Dist. Montgomery No. 26104, 2014-Ohio-4958, ¶ 22. A trial court abuses its discretion when a decision is made that is "unreasonable, arbitrary or unconscionable." *State v. Darmond,* 135 Ohio St. 3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. The abuse of discretion must materially prejudice a party in order for the trial court's decision to be reversed. *Banford v. Aldrich Chem. Co.*, 126 Ohio St. 3d 210, 2010-Ohio-2470, 932 N.E. 2d 313, ¶

38.

## IV. The Dram Shop Act Provides the Exclusive Cause of Action Against Liquor Permit Holders for Claims Based on Furnishing Alcohol to an Intoxicated Person

{¶ 15} No party has raised on appeal the issue of whether the trial court properly dismissed the claims alleged under R.C. 4399.18, commonly referred to as the Dram Shop Act. The dispositive issue in this appeal is whether the court properly recognized an exception to the Dram Shop Act to expose a liquor permit holder to liability based on common-law negligence for damages caused by a person who becomes intoxicated by drinking alcohol furnished by the liquor establishment. The assignments of error raised in the cross-appeal by Thirty-Eight Thirty and Ferraro will be resolved by addressing this issue.

{¶ 16} Historically, "dram shops" referred to establishments that served alcohol by the dram, a unit of liquid measure used in the United States during the colonial period.[1] As discussed by the Supreme Court of Ohio, Dram Shop laws were originally passed to make liquor permit holders liable for damages resulting from actions of their intoxicated customers under limited circumstances. *Klever v. Canton Sachsenheim, Inc.*, 86 Ohio St. 3d 419, 715 N.E. 2d 536 (1999). The *Klever* court stated:

Ohio historically refused to recognize claims against tavern owners for any injuries caused by their intoxicated patrons. The Ohio Dramshop

---

[1] Stephen J. Cahn, *New Common Law Dramshop Rule*, 9 Clev. Marshall L. Rev. 302 (1960).

Act, R.C. 4399.18, embodies that general, common-law rule that a person (or his representative) may *not* maintain a cause of action against a liquor permit holder for injury resulting from the acts of an intoxicated person. The statute creates a narrow exception, however, to the basic premise of non-liability by providing that "a person" has a cause of action against a permit holder or its employee for off-premises injury caused by an "intoxicated person" "*only* when" certain criteria are met. (Emphasis added.) R.C. 4399.18.

The Dramshop Act's limited exception to non-liability codified the "preexisting public policy." *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 362, 533 N.E.2d 732, 735. That policy, developed through decisional law, was that an innocent *third party* could recover from a commercial proprietor for injuries caused by an intoxicated patron under certain circumstances. Because this statutory exception creates a cause of action not previously recognized by common law, the exception must be narrowly construed.

*Klever* at 421.

{¶ 17} Without the Dram Shop Act, a negligence claim against the furnisher of alcohol would fail based on the presumption "that consumption rather than sale of intoxicating liquor was the proximate cause of the injury." *Stillwell v. Johnson*, 76 Ohio App.3d 684, 686, 602 N.E. 2d 1254 (1st Dist. 1991); *Cattabiani v. Purvis*, 2d Dist. Montgomery No. 15851, 1996 WL 664993 (Nov.15, 1996). In *Cummins v. Rubio*, 87 Ohio App.3d 516, 622 N.E. 2d 700 (2d Dist. 1993), we agreed with the First District Court of Appeals in *Stillwell, supra,* and the Sixth District Court of Appeals which had held that the

Dram Shop Act provides the sole, exclusive remedy against liquor permit holders for the negligent acts of intoxicated persons. *Vitek v. Wilcox,* 6th Dist. Williams No. WM89000004, 1990 WL 174163 (Nov. 9, 1990); *Brown v. Hyatt-Allen American Legion Post No. 538,* 6th Dist. Lucas No. L-89-336, 1990 WL 174317 (Nov. 9, 1990). *See also Smith v. S.P. Greenville Inn, LLC*, 11th Dist. Geauga No. 2014-G-3184, 2014-Ohio-4311, ¶ 39; *Wietrzykowski v. J-Ard Corp.*, 6th Dist. Lucas No. L-99-1120, 1999 WL 1267365 (Dec. 23, 1999). Since our decision in *Cummins*, at least six other appellate courts have joined in the holding that the Dram Shop Act provides an exclusive remedy against liquor permit holders for the harmful acts committed as a proximate result of a person's intoxication. *Billi v. Moyse-Morgan Ents. Inc.*, 9th Dist. Lorain No. 12CA010260, 2013-Ohio-1214, ¶14; *Jackson v. Walker*, 9th Dist. Summit No. 22996, 2006-Ohio-4351, ¶ 20; *Aubin v. Metzger,* 3d Dist. Allen No. 1-03-08, 2003-Ohio-5130, ¶ 12; *Litteral v. The Ole Menagerie*, 4th Dist. Lawrence No. 95CA33, 1996 WL 511656 (Sep. 4, 1996); *Carter v. Noble*, 12th Dist. Fayette Nos. CA2008-05-013, CA2008-05-016, CA2008-05-017, 2009-Ohio-1010, ¶ 15; *Proctor v. Morgan*, 8th Dist. Cuyahoga No. 97404, 2012-Ohio-2066, ¶ 8, fn.3; *Bishop v. Carpenter's Local Union #126*, 1st Dist. Hamilton No. C-070591, 2008-Ohio-2846, ¶ 22.

{¶ 18} Appellate decisions recognizing common-law negligence claims against a liquor establishment for persons injured by an intoxicated patron were based on distinguishable facts, because the injured person was a business invitee and the risk of harm was foreseeable, or the bar owner's negligence extended beyond the furnishing of alcohol. *King v. Lindsay*, 87 Ohio App. 3d 383, 622 N.E.2d 396 (10th Dist.1993) (bar owed duty to provide adequate security to prevent violence which was readily foreseeable on

the Saturday night of an OSU-Michigan football game at a busy OSU campus bar); *Prince v. Buckeye Union Ins. Co.,* 5th Dist. Richland No. 92–CA–6, 1992 WL 362578 (Dec. 2, 1992) (bar employee took away intoxicated patron's keys then later returned the keys to him and took no other action to prevent him from driving); *Auto–Owners Ins. Co. v. JC KC, Inc.,* 9th Dist. Summit No. 18937, 1998 WL 766695 (Nov. 4, 1998) (bar employee actively placed an intoxicated patron into a vehicle driven by another intoxicated patron).

{¶ 19} The current version of the Ohio Dram Shop Act, R.C. 4399.18 continues to limit remedies against any liquor permit holder "only when" certain criteria are met. The statute provides:

Notwithstanding division (A) of section 2307.60 of the Revised Code and except as otherwise provided in this section, no person, and no executor or administrator of the person, who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or an employee of a liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless the personal injury, death, or property damage occurred on the permit holder's premises or in a parking lot under the control of the permit holder and was proximately caused by the negligence of the permit holder or an employee of the permit holder. A person has a cause of action against a permit holder or an employee of a permit holder for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot

under the permit holder's control *only* when both of the following can be shown by a preponderance of the evidence:

(A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to at least one of the following:

(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

(2) A person in violation of section 4301.69 of the Revised Code.

(B) The person's intoxication proximately caused the personal injury, death, or property damage.

(Emphasis added).

{¶ 20}  The Dram Shop Act imposes a duty on liquor permit holders to look for and identify intoxicated persons and minors and to take affirmative steps to prevent foreseeable injuries. It establishes elements of the tort that can be pursued against a liquor permit holder if an innocent third person is injured by a minor or a noticeably intoxicated person who becomes intoxicated by alcohol furnished to them by the liquor permit holder. The Dram Shop Act incorporates and recognizes only two duties of a liquor permit holder based on two other statutes that create:  (1) a statutory duty not to serve alcohol to a noticeably intoxicated person, prohibited by R.C. 4301.22 (B); and (2) the duty not to serve alcohol to minors, prohibited by R.C. 4301.69 and by R.C. 4301.22 (A). The Dram Shop Act expressly provides that a cause of action for injuries off the premises

resulting from the establishment's furnishing of alcohol "only" exists under those two circumstances.[2]

{¶ 21}  Other than the Dram Shop Act, Ohio law does not establish or recognize any other duties of a liquor permit holder upon which a tort action can be pursued for damages caused by a person intoxicated by alcohol furnished by the permit holder. The Dram Shop Act is an exclusive remedy and does exclude all other common law negligence claims against a liquor permit holder for the negligent acts of a person who became intoxicated by alcohol furnished by the permit holder. The Dram Shop Act does not provide a cause of action against a liquor permit holder for its failure to control drinking by its employees or independent contractors during their work shift, or address the negligence that may occur by the furnishing of alcohol to workers in a manner likely to lead to intoxication coupled with the failure to discover the intoxication of any worker when their shift ended and the failure to take action to prevent drunk driving by such workers. Since the Dram Shop Act, by its terms, provides the exclusive remedy for the allegations presented in this case, we cannot look to the common law of negligence to determine if a cause of action may proceed against a liquor permit holder that contracts with a worker to engage in conduct that includes drinking alcohol, when that worker's intoxication is the proximate cause of a third person's injuries. Thus, we conclude that a claim for common-law negligence does not exist based on the facts alleged in Johnson's complaint, and

---

[2] This case illustrates the effect that codification of the common law can have on the future development of the common law.   By codifying the existing common-law limitation on a dram shop owner's liability, the General Assembly has precluded recognition of additional common-law duties of a dram shop owner that might give rise to liability. Recognition of additional circumstances for which a dram shop owner may be liable as a result of furnishing alcohol must come from the legislature.

presented to the jury.

{¶ 22} We do not conclude that the Dram Shop Act insulates a liquor permit holder from liability for other common-law negligence claims, not based upon its furnishing of alcohol, that may arise from the operation of its business, such as premises liability or invasion of privacy. *See, e.g.*, *Aubin v. Metzger*, 3rd Dist. Allen No. 1-03-08, 2003-Ohio-5130, ¶16; *Keaton v. Gordon Biersch Brewery Restaurant Group, Inc.*, 10th Dist. Franklin No. 05AP-110, 2006-Ohio-2438. Under limited circumstances, and depending on provable facts, a cause of action may be brought against an employer for its negligence when it breaches an established duty to supervise or control its employees, fails to take reasonable action to provide safe working conditions, or fails to provide training to avoid or prevent a foreseeable risk of injury, and that breach is a proximate cause of injury. *See, e.g.*, *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 171 Ohio App. 3d 570, 2007-Ohio-795, 872 N.E. 2d 295 (2d Dist.); *Bryant v. Lawson Milk Co.*, 22 Ohio App. 3d 69, 488 N.E. 2d 934 (10th Dist. 1985). However, we have held that an employer does not owe a duty to an intoxicated employee to prevent him from leaving the work premises, when the employee became intoxicated because of his own actions. *Howard v. Delco Div. of General Motors Corp, Inc.*, 41 Ohio App.3d 145, 534 N.E. 2d 936 (2d Dist. 1987). *Accord Curtis v. Gulley*, 12th Dist. Fayette No. CA2006-03-013, 2006-Ohio-6081. In the case before us, no claims were presented alleging a specific breach of duty other than the furnishing of alcohol to an intoxicated person.

{¶ 23} Therefore, the trial court's overruling of Thirty-Eight Thirty's motion for a directed verdict was error. The Assignments of Error raised in the cross-appeal by Thirty-Eight Thirty are sustained. The judgment of the trial court against Thirty-Eight Thirty is

Reversed and Vacated.   In all other respects, the judgment of the trial court is Affirmed.

### V.  All Other Assignments of Error Are Moot

{¶ 24}  The only assignment of error raised by Johnson asserts error by the trial court in dismissing the claims alleging Ferraro's personal liability.   Since the personal liability claim was solely based on the common-law negligence claims, our conclusion that a common-law negligence action did not exist precludes any claim for personal liability on Ferraro's part. Accordingly, Johnson's sole assignment of error is overruled as moot.

{¶ 25}  We also conclude that the issue raised by Western Insurance regarding its duty to defend is not raised by this appeal, and will not be addressed herein.   Pursuant to App. R. 12(A)(1)(b), the appellate court is only required to determine the merits of the assignments of error set forth in the briefs in accordance with App. R. 16. Pursuant to App. R. 12(A)(2), the appellate court is authorized to dismiss alleged errors that are not presented or argued properly. Therefore, the potential issue listed in the cross-appellant's docket statement regarding the insurance company's duty to defend, which was not raised as an assignment of error, is not before us.

### VI.  Conclusion

{¶ 26}  The assignments of error raised by Thirty-Eight Thirty in the cross-appeal having been sustained, and the sole assignment of error raised by Johnson, plaintiff-appellant, having been overruled, the judgment of the trial court against Thirty-Eight Thirty is Reversed and Vacated; and the judgment is Affirmed in all other respects.

. . . . . . . . . . . . .

DONOVAN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Dennis Mulvihill
Stephen D. Behnke
Jonathan B. Freeman
Steven E. Bacon
Jeffrey D. Slyman
Robert H. Stoffers
David K. Frank
Steven Zeehandelar
Kevin Connell
Mary Montgomery
Hon. Richard S. Skelton
(successor to Judge Frances E. McGee)