**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Johnson v. Montgomery,* **Slip Opinion No. 2017-Ohio-7445.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7445

JOHNSON, APPELLANT, ET AL. *v.* MONTGOMERY; THIRTY-EIGHT THIRTY, INC., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Johnson v. Montgomery,* Slip Opinion No. 2017-Ohio-7445.]**

*The phrase "intoxicated person" in Ohio's Dram Shop Act, R.C. 4399.18, includes not only patrons but also workers, independent contractors, and others served by the permit holder—Dram Shop Act applies to determine liability of permit holder who sold intoxicating beverages to an intoxicated worker or independent contractor whose intoxication caused an injury.*

(No. 2016-0790—Submitted April 6, 2017—Decided September 6, 2017.)

APPEAL from the Court of Appeals for Montgomery County,
Nos. 26319 and 26322, 2016-Ohio-1472.

_____

**DEWINE, J.**

{¶ 1} Under Ohio's Dram Shop Act, R.C. 4399.18, someone injured by an "intoxicated person" may sue a liquor-permit holder for an off-premises injury only

when the permit holder or its employee served the person knowing her to be intoxicated or underage. This case, which has reached us by way of a discretionary appeal, involves a dancer at a strip club who left the club intoxicated and caused an accident on her way home. The question is whether the dancer qualifies as an "intoxicated person" under the statute or whether the term encompasses only the permit holder's patrons. The plain language of the statute provides the answer: the ordinary meaning of "person" includes not only patrons but also dancers, workers, independent contractors, and others served by the permit holder. Thus, the accident victim may pursue a claim against the club only under the Dram Shop Act.

## I. An Intoxicated Strip-Club Dancer Causes an Accident

{¶ 2} Nichole Johnson was severely injured when the car in which she was a passenger was struck by another car. The other car was driven by Mary Montgomery, who had just finished her shift as a dancer at a strip club known as The Living Room. Montgomery admitted that she was intoxicated when she left the club: she had ingested cocaine that day, and while working, she had drunk "a few" beers that had been purchased for her by customers.

{¶ 3} Drinking while working was not unusual at The Living Room. Although not required to drink, the dancers did so as a matter of course, often to embolden themselves to perform. The practice was encouraged by the club's waitresses, who urged customers to buy drinks for the dancers. Thirty-Eight Thirty, Inc., which operated The Living Room, benefited from the dancers' drinking: the club charged a higher price for drinks purchased for dancers. According to Michael C. Ferraro, the sole officer and shareholder of Thirty-Eight Thirty, 95 percent of the club's profits came from alcohol sales, and 30 to 40 percent of the alcohol sold was purchased by customers for the dancers. Virtually no limits were placed on how much a dancer could drink while working. And while Ferraro claimed that a dancer's husband or boyfriend would be called in the event the dancer became too

2

intoxicated to drive, Montgomery testified that no one had ever arranged a ride home for her.

{¶ 4} Under a contract with Thirty-Eight Thirty, Montgomery paid $30 a night to lease space for her dancing. In return, she kept all the tips from customers. She received no wages or compensation from Thirty-Eight Thirty or Ferraro.

## II. The Proceedings Below

{¶ 5} Johnson filed a complaint asserting common-law-negligence claims against Montgomery, Ferraro, and Thirty-Eight Thirty and a claim for violation of the Dram Shop Act against Thirty-Eight Thirty and Ferraro. A default judgment was rendered against Montgomery. The claims against Thirty-Eight Thirty and Ferraro were tried to a jury. At the conclusion of Johnson's case, a magistrate directed a verdict in favor of Ferraro as to his personal liability and in favor of Thirty-Eight Thirty as to its liability under the Dram Shop Act. Thirty-Eight Thirty's motion for a directed verdict on the issue of common-law negligence was denied. The jury returned a verdict in favor of Johnson for $2,854,645.55 on the negligence claim. The trial court adopted the magistrate's decision and entered judgment in accordance with the jury's verdict.

{¶ 6} Johnson appealed the trial court's judgment directing a verdict for Ferraro on the issue of personal liability. Thirty-Eight Thirty and Ferraro cross-appealed. They argued that outside the Dram Shop Act, Ohio did not recognize a cause of action based on negligently furnishing a tortfeasor with intoxicating beverages and that the trial court should not have instructed the jury on common-law negligence. The Second District agreed and concluded that because the Dram Shop Act provided the exclusive cause of action against Thirty-Eight Thirty, the trial court had erred when it allowed the issue of common-law negligence to go to the jury. Thus, the judgment against Thirty-Eight Thirty on the common-law-negligence claim was reversed. The reversal of that verdict rendered moot the

question of Ferraro's personal liability. We accepted Johnson's discretionary appeal. 146 Ohio St.3d 1502, 2016-Ohio-5792, 58 N.E.3d 1173.

### III.  Ohio's Dram Shop Act

{¶ 7} "The Ohio Dramshop Act, R.C. 4399.18, embodies [the] general, common-law rule that a person (or his representative) may *not* maintain a cause of action against a liquor permit holder for injury resulting from the acts of an intoxicated person." (Emphasis sic.) *Klever v. Canton Sachsenheim, Inc.*, 86 Ohio St.3d 419, 421, 715 N.E.2d 536 (1999). Liability attaches only under the limited circumstances prescribed by the statute. Johnson maintains that the Dram Shop Act does not apply under the facts of this case and that Thirty-Eight Thirty's liability for her injuries should be determined under common-law-negligence principles. The gist of Johnson's argument is that the statute determines a permit holder's liability only with respect to acts by its patrons, not by its workers or independent contractors.[1]

{¶ 8} Our starting point is the language of the statute:

Notwithstanding division (A) of section 2307.60 of the Revised Code and except as otherwise provided in this section, no person * * * who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or an employee of a liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless the personal injury, death, or property damage occurred on the permit holder's premises or in a parking lot under the control of the permit holder and was proximately caused by the negligence of the permit holder or an employee of the permit holder.

---

[1] Johnson does not suggest that Montgomery was an employee of Thirty-Eight Thirty.

4

> A person has a cause of action against a permit holder or an employee of a permit holder for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:
>
> (A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to at least one of the following:
>
> (1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;
>
> (2) A person in violation of section 4301.69 of the Revised Code.
>
> (B) The person's intoxication proximately caused the personal injury, death, or property damage.

R.C. 4399.18.

{¶ 9} The statute is straightforward. The only cause of action against a liquor-permit holder for off-premises injuries caused by an intoxicated person arises when the permit holder (or an employee) knowingly sells alcoholic drinks to a noticeably intoxicated person or an underage person. What constitutes a sale is defined broadly: " '[S]ale' and 'sell' include exchange, barter, gift, offer for sale, sale, distribution and delivery of any kind, and the transfer of title or possession of beer and intoxicating liquor either by constructive or actual delivery by any means or devices whatever * * *." R.C. 4301.01(A)(2). So the Dram Shop Act applies even if the beer or liquor was not purchased directly by the intoxicated person but was purchased by someone else and given to her.

**{¶ 10}** Johnson does not dispute that when the Dram Shop Act applies to a given set of facts, it provides the exclusive basis for relief again a permit holder.[2] But she maintains that the statute does not apply here, because Montgomery was not the club's customer; she was its worker or its independent contractor. Thus, she argues that Thirty-Eight Thirty's liability is based in common-law negligence, not the Dram Shop Act. In Johnson's view, "intoxicated person" really means "intoxicated patron"—a reading she claims is supported by the language and legislative history of the statute.

A. "Person" Means Person, and a Dancer Is a Person

**{¶ 11}** Johnson insists that the Dram Shop Act's limitation of a permit holder's liability to situations in which it "knowingly sold an intoxicating beverage to * * * [a] noticeably intoxicated person" means that the statute covers claims involving only a permit holder's patrons, not its workers or independent contractors. She notes that this court and others have referred to "patrons" when discussing the Dram Shop Act. For example, in *Klever*, 86 Ohio St.3d at 421, 715 N.E.2d 536, we noted that the appellee's claim was that "the Ohio Dramshop Act allows a cause of action by an intoxicated, underage patron (or his representative) against a liquor permit holder for injuries (or death) that the intoxicated, underage patron inflicts upon himself." And we held in that case that "in Ohio there is no cause of action against a liquor permit holder by a voluntarily intoxicated patron (or his representative) who is 'underage' pursuant to R.C. 4301.22(A)(1) and 4301.69, but who has attained the age of majority, for self-inflicted injury (or death) due to being intoxicated." *Id.* at 423.

---

[2] Amicus curiae Mothers Against Drunk Driving of Ohio does challenge the Second Appellate District's conclusion regarding the exclusivity of the Dram Shop Act as a remedy, but we will not address the issue because it has not been raised by a party to this appeal. *See Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53.

**{¶ 12}** But the decisions cited by Johnson do not squarely address the issue whether "intoxicated person" should be interpreted to include *only* intoxicated *patrons*. The word "patron" was used in those cases because the allegedly intoxicated person was in fact a patron; the word was not intended as a limitation on the class of persons covered by the statute. Notably, the court in *Klever* did not use the word "patron" exclusively when discussing the act. *See Klever* at 421 (the Dram Shop Act reflects the common-law rule barring suit "against a liquor permit holder for injury resulting from the acts of an intoxicated person").

**{¶ 13}** Nothing in our precedents dictates that the word "person" be limited to patrons. When words are not defined in a statute, we give them their "plain, everyday meaning." *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70, 525 N.E.2d 1386 (1988). The plain, everyday meaning of "person" is not limited to patrons. A patron or a customer is a person, as is a dancer or a worker or an independent contractor. The statute does not limit the definition of "person" based on the individual's relationship to the permit holder. We conclude "intoxicated person" includes an "intoxicated worker."

### B. No Need to Look Beyond the Plain Words of the Statute

**{¶ 14}** Despite the plain language of the statute, Johnson urges us to interpret it more narrowly to apply only to acts of permit holders' patrons. She insists that such an interpretation is consistent with the legislative history of the Dram Shop Act and with the strong public policy against drunken driving. But the case is determined by the plain language of the statute.

**{¶ 15}** When a statute is unambiguous, we need go no further to ascertain the legislature's intent; we apply the statute as written. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). Here, the statute is unambiguous: liability is imposed upon a permit holder only when it knowingly sells beer or liquor to a noticeably intoxicated person. Moreover, while we are not indifferent to the steep toll exacted by drunken driving,

it is not for us to determine whether public policy would be better served by a Dram Shop Act that applied only to a permit holder's sales to its patrons. "The role of this Court is to apply the statute as it is written—even if we think some other approach might 'accord[ ] with good policy. ' " *Burrage v. United States*, __ U.S. __, ___, 134 S.Ct. 881, 892, 187 L.Ed.2d 715 (2014), quoting *Badaracco v. Commr. of Internal Revenue*, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). Arguments for narrowing the application of the statute are more properly addressed to the legislature. Our review starts and stops with the unambiguous language of the statute.

### C. No Liability Under the Dram Shop Act

{¶ 16} The Dram Shop Act applies to this situation: Johnson's injury was proximately caused by the negligent actions of an intoxicated person—Montgomery—away from Thirty-Eight Thirty's premises. Under the statute, then, neither Thirty-Eight Thirty nor Ferraro could be held liable unless the club (or one of its employees) knowingly sold an intoxicating beverage to Montgomery when she was noticeably intoxicated. The trial court found that Montgomery was not noticeably intoxicated—a determination that was not challenged on appeal. Thus, Thirty-Eight Thirty and Ferraro were not liable under the Dram Shop Act.

{¶ 17} The dissenting justice agrees that we have answered the legal question here correctly but doesn't like the outcome of the case. Like the dissenting justice, we are sympathetic to Johnson's suffering as a result of her terrible injuries. And like the dissenting justice, we do not condone The Living Room's distasteful business practices. But it is not the role of the court to create out of whole cloth the case we want to resolve. We review the issues that are raised by the appellant. Here, the magistrate presiding over Johnson's jury trial concluded, as a matter of law, that she had no cause of action under the Dram Shop Act. Nowhere—not in her objections to the magistrate's decision, nor in her appeal to the Second District, nor in her argument to this court—has Johnson argued that that conclusion was

8

error—plain or otherwise. To suggest that absent such argument from Johnson, this court could sua sponte find plain error here ignores the constraints of appellate review. The dissenting justice's real quarrel is with the language of the Dram Shop Act—its requirement that one "knowingly" sell alcohol to a "noticeably intoxicated person" in order to be held liable. But that fight belongs in the General Assembly.

{¶ 18} As even the dissenting justice acknowledges, the Dram Shop Act applies here. Because the act applies, Ferraro and the club may not be held liable under common-law-negligence principles. The court of appeals properly vacated the judgment against Thirty-Eight Thirty.

## IV. Conclusion

{¶ 19} As used in Ohio's Dram Shop Act, R.C. 4399.18, the phrase "intoxicated person" includes any person, not just a permit holder's patrons. Thus, the Dram Shop Act applies to determine the liability of a permit holder who sold intoxicating beverages to an intoxicated worker or independent contractor whose intoxication causes an injury. We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur.

O'DONNELL and FRENCH, JJ., concur in judgment only.

O'NEILL, J., dissents, with an opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 20} Respectfully, I must dissent.

{¶ 21} I agree with the majority's answer to the legal question raised in this case. Mary Montgomery was most certainly an "intoxicated person" within the meaning of the Dram Shop Act, R.C. 4399.18, when she drove home from the strip club where she had worked for the night, and caused an accident. However, under the plain language of the first paragraph of the statute, appellant, Nichole Johnson, did not have a cause of action against the strip club or its employees, except as

provided in R.C. 4399.18. And that answers the issue raised in this case. Because I believe that the trial court committed plain error when it directed a verdict in favor of appellees, Thirty-Eight Thirty, Inc., and Michael Ferraro, with regard to Johnson's Dram Shop Act claim, I would reverse the judgment of the court of appeals and remand the cause to the trial court.

{¶ 22} In Montgomery's drunken state, she nearly killed two people. She caused Johnson permanent substantial physical deformities, and the jury found that Johnson will ultimately have more than one million dollars in medical costs as a result of the accident. But because a Dram Shop Act claim requires the plaintiff to show that the liquor-permit holder or one of its employees *knowingly sold* an intoxicating beverage to a noticeably intoxicated person and the magistrate in this case found that there was no "testimony of indicia of intoxication" from a witness who saw Montgomery on the night of the accident, the court directed a verdict against Johnson on her Dram Shop Act claim.

{¶ 23} That finding by the magistrate is directly contrary to the evidence presented. Montgomery testified that she was drunk on the night of the accident. Montgomery's intoxication was proven beyond doubt when she was asked, "Now while you were working [on the night of the accident] did you become drunk from alcohol?" and she answered, "I would think so." That answer standing alone was sufficient to make the Dram Shop Act claim a question for the jury.

{¶ 24} A directed verdict is only proper when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). So the real question here is: Did the liquor-permit holder or its employees sell an intoxicating beverage to Montgomery when she was noticeably intoxicated? It is that simple. And the nonmoving party is entitled to the benefit of all reasonable inferences.

10

**{¶ 25}** Much like a motion to dismiss for failure to state a claim, Civ.R. 12(B)(6), or a motion for summary judgment, Civ.R. 56(C), a motion for a directed verdict asks a court to terminate litigation without sending fact questions to a jury. "This does not involve weighing the evidence," which "connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for a directed verdict." *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68-69, 430 N.E.2d 935 (1982).

**{¶ 26}** The facts of this particular case are that Montgomery was encouraged by the liquor-permit-holder's employees to drink while she worked and she drank until she was drunk on the night of the accident. Those are the facts that were testified to under oath in front of the jury. A jury could make a reasonable inference that her drunkenness was noticeable to the bartenders who served drinks intended for her. The jury—not the magistrate—was in the best position to decide whether to make that inference. But the magistrate ignored Montgomery's admission that she had been drunk and presumed from the lack of other witness testimony that she had not been noticeably intoxicated. In making that presumption, the magistrate determined what "conclusions [could] be drawn from the evidence." *Id.* at 69. That is not permissible when considering a motion for a directed verdict. *Id.*

**{¶ 27}** But to really understand what happened here, one must look at *why* Montgomery was driving drunk that night. It is beyond comprehension that the majority does not address the fact that this entire sordid fact pattern was predictable, planned, intentionally created, and designed into a business plan. Tragically, that business plan is now ratified by the Supreme Court of Ohio. Simply stated, the liquor-permit holder designed a business that profited when its patrons bought intoxicating beverages for the dancers stripping in the bar. Clearly, the dancers were going to have to get home after working, and no arrangements were made to ensure that they did not drive drunk. It is preposterous to suggest that the owner of

the bar had no knowledge, whether actual or imputed, that some of the dancers were served drinks when they were noticeably intoxicated.

{¶ 28} The facts in this case show that the strip club operated on a business model that is as unbelievable as it is unconscionable. The club made 1 percent of its revenue by leasing use of the space to dancers for $30 a night to draw and entertain clientele. Four percent of the club's revenue came from a cover charge paid by the clientele. But a whopping 95 percent of the club's revenue came from alcohol sales. In addition to the clientele and the dancers, every one of the club's employees was permitted and indeed encouraged to drink, including the security guard, the bartenders, and the waitstaff. Eighty to 85 percent of the dancers drank while working, and collectively, the dancers drank between 30 and 40 percent of the alcohol consumed on the premises. Whether a dancer bought a drink for herself or a client bought it for her, the bar charged significantly more for drinks sold for dancers to drink. As a result of the upcharge, the drinks sold to or for dancers brought upward of half the club's total revenue. It is not surprising then that the club did not limit the number of drinks a dancer could drink and that no workers at the club kept track of how much they drank.

{¶ 29} The owner of the club even admitted in his testimony that it was possible that the staff, who were purportedly trained to identify and deal with intoxicated individuals, might be impaired in doing so if they were also drinking. The owner of the club testified that there could be as many as 172 dancers on a weekly basis driving themselves home from the club after drinking alcohol. The inference is that this dancer, on this night, was intoxicated at the club when she received drinks, and drove herself home. That knowledge, on behalf of the permit holder through his employees, is an issue for a jury.

{¶ 30} It is a high bar for plaintiffs to prove that liquor-permit holders or their employees "knowingly" sold alcohol to a "noticeably intoxicated person." R.C. 4399.18(A)(1). But the bar has crept too high if a person injured by an

admittedly drunk individual cannot recover under the Dram Shop Act in circumstances such as these. I think the absurdly high burden of proof on Dram Shop Act claims operates as an unmistakable poison pill for one of the Dram Shop Act's purposes: "to place a duty on a person selling alcoholic beverages to observe and know when a patron is intoxicated." *Gressman v. McClain*, 40 Ohio St.3d 359, 363, 533 N.E.2d 732 (1988). Under the current law, bar owners can stick their heads in the sand and expect the Dram Shop Act to protect them from liability. Instead of allowing bar owners to choose blissful ignorance, we should return to the classic method by which society has placed duties on its citizens, best embodied in the eloquent words of Judge Cardozo: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island RR. Co.*, 248 N.Y. 339, 344, 162 N.E. 99 (1928). That is the law in Ohio, apparently except when liquor-permit holders are involved.

{¶ 31} These are remarkable circumstances. Given the business model of the club—patrons encouraged to buy drinks for the dancers and dancers encouraged to drink—the bartenders had a duty to pay attention to the number of drinks provided to the dancers and to their level of intoxication. After reviewing the record, I cannot believe that Montgomery was not a "noticeably intoxicated person" when the strip club sold the alcohol that it knew was for her. R.C. 4399.18(A)(1). Selling alcoholic beverages for dancers was how the club made most of its money. There was at least enough evidence in the record for a jury to infer that Montgomery had been a noticeably intoxicated person when she was served, and therefore, the trial court erred in issuing a directed verdict on Johnson's Dram Shop Act claim.

{¶ 32} I cannot join the majority, because I am shocked that the law would sanction the conduct of this permit holder prior to the accident in which Nichole Johnson was injured. In this extreme case, I would hold that the magistrate's order directing a verdict on Johnson's Dram Shop Act claim was plain error. This is one

of the "extremely rare cases where exceptional circumstances require" that we find plain error in order "to prevent a manifest miscarriage of justice." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). I believe that the injustice of not holding the liquor-permit holder liable in this case will "have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* Contrary to the position the majority takes regarding the constraints on our review, we have recognized for nearly 30 years that we "retain power to *sua sponte* consider particular errors under exceptional circumstances," and we conduct that review "under our plain error standard of analysis." *State v. Greer*, 39 Ohio St.3d 236, 244, 530 N.E.2d 382 (1988). It is not that this court lacks the authority to avoid an injustice today, it merely lacks the will.

{¶ 33} I find it hard to believe that the Supreme Court of Ohio is allowing this outcome to stand. This court should not take away a negligence verdict and look the other way regarding a Dram Shop Act claim that we can see was wrongfully taken away early in the lawsuit. To do so is to absolve the club entirely of responsibility. I am unable to join a majority decision that absolves from liability a liquor-permit holder who encourages the dancers in its club to drink alcohol in order to reap enormous profits from the drinks purchased for the dancers, does not monitor the intoxication level of the dancers, and then sends them out on the roads without ensuring that they are fit to drive.

{¶ 34} Respectfully, I dissent.

_____

Organ Cole, L.L.P., Douglas R. Cole, Erik J. Clark, and Sean M. Stiff; Dennis Mulvihill; and Wright & Schulte, L.L.C., and Stephen D. Behnke, for appellant.

Altick & Corwin Co., L.P.A., Jonathan B. Freeman, and Steven E. Bacon; and Jeffrey D. Slyman, for appellees, Thirty-Eight Thirty, Inc., d.b.a. The Living Room, and Michael C. Ferraro.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Michael J. Hendershot, Chief Deputy Solicitor, urging reversal for amicus curiae state of Ohio.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging reversal for amicus curiae Ohio Association for Justice.

Traska Law Firm, L.L.C., Peter D. Traska, Bernadette Matheson, and Michelle Molzan Traska, urging reversal for amicus curiae Mothers Against Drunk Driving of Ohio.

_____